Mr. Cotter, when you're ready. Thank you, Judge Neumann. Good morning, Your Honors. My name is John Cotter, and with me is Thomas Durano from the firm of K&L Gates, representing the applicant, Biondi et al., and the Real Party of Interest Cardiopulmonary Corporation that owns the application at issue on this appeal. May it please the Court, this is an appeal from a two-to-one PTO board decision affirming the patent examiner's rejection of the Biondi et al. application for obviousness. The claims of Biondi concern interrogation of medical devices by a server computer, reaching out across a network, and getting data from any of a variety of medical devices through network access points, back over the network, and to the server. The board's decision and the rejection below are based primarily on the Van Ostrom reference in view of two other references, Ortiz and Kerr, and the fundamental issue here today is whether one of ordinary skill in the art in the year 2001 would have modified Van Ostrom and then combined the modified Van Ostrom reference with the other references to render obvious the claims of Biondi, and the answer to that question is no. In the words of the dissenting judge from the board, Judge Gonsalves, the modification of Van Ostrom's system proposed by the examiner and accepted by the majority of the board is irrational. The examiner's reasoning clearly does not rise to the level of the required rational underpinning to support the legal conclusion of obviousness. But doesn't that suppose that we agree with the dissent and disagree with the majority with respect to what the modification would be? We would have to agree with the dissent that that serves nothing more than a buffer function, right? In part, yes. And also the network function, too, is very important. But the majority made findings that it served more than a buffer function. I submit that those findings are not correct and they're not supported by substantial evidence. If you look at the entirety of Van Ostrom, it is talking about really, I'd say, two things. One is getting data in directly from the medical devices. There's an argument about whether that direct communication is a network or not. We submit it is not. But it's getting the information in directly by hardwired lines from the medical devices. Then that information is received at Van Ostrom's processing unit and is converted into a protocol that makes it able to go out the back end of Van Ostrom and be put out on a network. There's no substantial evidence in the record that suggests that that taking of the data in and converting it, making the protocol work so it can go out the back end, that storage of data or anything else is a database. There's no evidence of that. In fact, if you look at Van Ostrom, it's a very simple construction that's designed to take the... When you say there's no evidence of it, I mean, the majority made a factual finding that it does, that this unit, that 10 in the figure 1, does more than just acquire the data so that it can go back out. It made a factual finding that, in fact, served as a data collection and storage function at minimum. Right? It does serve data collection and some storage, yes. It does buffer the data for the purpose of then sending it out the back end. No doubt about it. But does it provide the kind of database that's claimed by Biondi is the question. And the answer to that is no. And the reason for that is that the board, first of all, had to take Van Ostrom and determine that its buffer was a database and then put that data into the buffer and that consists of a database management system or a data management system, excuse me, a DMS. But the database and thereby the DMS that's described in the specification of Biondi is more sophisticated than just taking in the data by a particular protocol and converting it and then storing it for shipping it out the network end, the back end. In fact, if you look at the disclosure of Biondi, the database, excuse me, the data management system extracts data from the database of Biondi using queries and web software and uses those queries and web software to go and so the data can be extracted and then sent out the back end. But these distinctions aren't in the claim, are they? They're not all in the claim. If you look at the claim itself, it does describe a database in communication with the server and the database comprising data from said plurality of medical devices along with other data. There's a query in clause that talks about the listener pollster that's used in the server with the database. And if you go to the specification of Biondi at A413 of the joint appendix at paragraphs 42 and 43, it describes the data extraction and query process and putting it over the back end again. Fundamentally, that is not something that is done by the buffering system of Van Ostrom. But if that's your distinction from the prior act, why not just put it in the claim and end the argument? Your Honor, I don't know why it's not in the claim that way, but we have to read the claim in view of the specification to understand what the claim language means. And I submit that if you read the specification in light, excuse me, the claim in light of the specification, you can see that the database includes the data management system that is used to query and transfer the data, extract and transfer the data. And again, that's fundamentally different from Van Ostrom, which is a very simple system in the database regard. Getting back to what Judge O'Malley was asking about, the database is one piece, then you have to go to the networking piece, and the networking is very important here. And it's not as simple in 2001, again, for one of ordinary skill in the art, to look at a Van Ostrom, the Van Ostrom reference and say, oh, this is a device that takes information in on the front end directly through lines, that's the only disclosure, puts it in through these various lines into this unit, and then puts it out the back end and say, oh, well, we'll make it a network unit that gets information over a network. And the reason you wouldn't do that in 2001 is because it's not a trivial problem to get information over a network. You have to find the information if you're getting information over a network. The way a cloud or a network works is there's information over here, or equipment over here with information in it, there's some other device over here, and this device over here has to find the information, has to query, has to determine where it is. Doesn't CARE disclose that, though? Excuse me? Doesn't CARE or CUR disclose that? To a limited extent, but I think CARE is more, we're not really arguing CARE separately in great detail. The real point is, would you go to CARE and put it with Van Ostrom? The board looked at both. I mean, the board said that in light of CARE, it would have been obvious. I mean, the board didn't look at each reference separately, did it? No, it looked at them as a whole and put them together, and put them together. But it starts with Van Ostrom and says, you know, what would you do? Well, you can modify Van Ostrom in the way that it did. And why it was improper and doesn't have substantial evidence, and frankly, defeats the purpose of Van Ostrom to put CUR or TEAS on the front end, is because the very purpose of Van Ostrom was to take these disparate medical devices with their various protocols of information, each with their own line, coming into a device. How do you get that information from the device into a buffer or whatever you want to call it, even put aside the database issue, assume it's that even, or even assume it's a server, which we don't concede, how do you get that information to that place? What they show is you just, what Van Ostrom does is it creates these DEBSOMs and the other software it's disclosing to convert that protocol, the hardware protocol, the software protocol, and the data format of the disparate devices so that they can come into a unit, and then that unit can pump them out over a network. So does your argument depend upon your position that it would be irrational to modify Van Ostrom, or even if we concluded that it wouldn't be necessarily irrational to try to modify Van Ostrom, but do you independently argue there's no motivation to combine? Yes, independently there's no motivation to combine. Van Ostrom knew about networks, had a network on the back end, it did nothing to disclose using a network on the front end. And again, why would Van Ostrom disclose that when that wasn't its purpose? So the decision of the board is irrational in converting Van Ostrom to this device that has supposedly a database as claimed, supposedly a server as claimed, and supposedly the networking capability on the front end as claimed. You can't just take a device that's got a particular purpose and a particular disclosure where the disclosure notes that networks exist, but doesn't make any use of those networks on the front end, and then say, oh, well, we're just going to pick and choose from CARE or ORTES, which are network information devices, and stick them in there in between, in between the devices that have the information with the protocols and the unit that's going to receive the data. Now you've got a unit that receives data that is network ready. It is networked information. That unit doesn't have the capability of reaching out to get that information. Yeah, it has polling capability, but polling down a dedicated line to the device. It doesn't have polling capability out to a broader network to go and find the disparate device and then convert the data when it finds the device. That's fundamentally different. It's not a trivial problem to take a non-networked system that's just designed to receive directly data into the system and then say, oh, we're just going to network it. It doesn't work that way. Again, Van Ostrom could have done that. It knew about networks, but it had no intention of doing anything like that. What's the precise function of the pollster in the application? The precise function of the pollster, it's really several functions. It's to use that to pull from the server across the network to the medical devices, find them, and then interrogate them for data. Find out what kind of data they have and then pull it out and bring it over the network back to the server. In basic form, that's what it does. And that's different from just simply a direct line or a series of direct lines into a device that just says, are you ready to send data? Yeah, we're ready to send data or we're not. Do you have data? Yeah, we have data or not. That's what Van Ostrom does with its RS-232 lines and its direct lines in. It doesn't say, where is your device? How do we find you over a network? Okay, shall we save your rebuttal time, Mr. Cotter? Yes, please. Thank you. Ms. Schoenfeld? May it please the Court, I'm Meredith Schoenfeld representing the PTO. So to address a number of points made by the appellant, the purpose of Van Ostrom, I don't think can be limited to what they have said as just to gather the data. And that is supported by the board decision in numerous instances. For example, A6, the board recognizes that Van Ostrom is really doing the same thing, as he mentioned, has the same purpose and idea to take the data and to move it elsewhere. It's not just moving data over a serial line. There's no reason to read Van Ostrom in the limited way, and neither the board nor the examiner did. Additionally, with respect to CUR, when we talk about the networking capability and the conversion, when you look at the record in A37, CUR clearly speaks about the ability to take the data and format it and put it on a network. How do you respond, though, to the argument that they make that all you're really doing here is something that we warn against all the time, which is you're picking and choosing different pieces from prior art and then using hindsight to put them together? I mean, Van Ostrom was a pretty simple concept. I mean, what is the real motivation to combine these pieces? I mean, I think the invention was a simple concept as well. And I think in order to get to hindsight, you have to be really pulling from their specification. And the board specifically found that Appellant didn't have enough evidence to show that hindsight was being used. And I think that... It's kind of hard to make a case on hindsight, right? That's the board's position, yes. But what kind of evidence, then, do you think would have been sufficient? Well, I think the Appellant could have shown how these things were not in the prior art, or they were pulling from different unrelated prior art. I mean, both CUR and Van Ostrom were talking about pulling medical data over to a central device. So you would look to the combination. You would look to those pieces of prior art for the combination. And then to their point about the database, on our brief on page 8, we point to where both the examiner and the board did make the finding that Van Ostrom has a database. It is pulling and pushing out data that references A625 of Van Ostrom, where we talk about the data management system, which does store and retrieve measured data. So I think as claimed, and I think as was pointed out earlier, the claims are fairly broad. So as claimed, there is evidence for the database claim limitation. There are no further questions. Thank you, Ms. Schoenfeld. Thank you. Mr. Cotter. Thank you, Your Honor. Just briefly, I submit you could take the point that the board has said there's substantial evidence, and you have to look behind that, I submit. And if you look behind that, you see that in order to use Van Ostrom in the way it's been used, which again, no one's disputing it's the fundamental reference, you have to remove the serial lines to the Van Ostrom unit. You have to create a new pollster that does more than the Van Ostrom pollster in the way I with a network connection, like, you know, supposedly Kerr or Ortiz. You have to place a new network in place. You have to figure out what that network is. You have to add another interface on the other side of Van Ostrom. You have to find some way to connect the Van Ostrom device to the interface. And you can say, the board can say they have substantial evidence that that's how that's But the teaching of Van Ostrom is very simply a device that gets information directly from serial lines. I submit if you read Van Ostrom, there's nothing in it about doing it any other way, directly in, not over any kind of cloud or other sort of network, like a local area network, it's just a direct line in. And that's the fundamental difference. Once you say, as the put them in between Van Ostrom and the medical devices from which Van Ostrom is going to get information, you've defeated the purpose of Van Ostrom. And we submit that no one of ordinary skill in the art in 2001 would look at it that way. You have any more questions, Your Honor? Any more questions? Thank you very much. Thank you, Mr. Cotter. The case is taken under submission. That concludes the argument of cases.